# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Records and information associated with call number 414-676-7641 (referred to in attachment B as "the Account") controlled by Sprint | Case No. 22-1847M(NJ)<br>**Matter No.: 2022R00444** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 12/6/2022    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Nancy Joseph   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 11/22/2022 @ 11:43 a.m.

*Nancy Joseph*
*Judge's signature*

City and state:    Milwaukee, WI        Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

**Property to Be Searched**

Records and information associated with the cellular telephone assigned call number 414-676-7641 (referred to in attachment B as "the Account"), that is stored at the premises controlled by Sprint Corporation, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

# ATTACHMENT B

## Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the following dates: May 1, 2022 through November 18, 2022:

    A.  The following information about the customers or subscribers of the Account:

        1.  Names (including subscriber names, user names, and screen names);

        2.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        3.  Local and long distance telephone connection records;

        4.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        5.  Length of service (including start date) and types of service utilized;

        6.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        7.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

II. **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Section 1951 (Hobbs Act) and Title 18, United States Code, Section 924(c) (use of a firearm during a crime of violence) involving BRENDAN J. WASHINGTON, during the period of May 1, 2022, through November 18, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Providers to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 22-1847M(NJ)
Records and information associated with call number ) **Matter No.: 2022R00444**
414-676-7641 (referred to in attachment B as "the )
Account") controlled by Sprint )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) and 924(c) | Hobbs Act Robbery and Use and Brandishing of a Firearm During a Crime of Violence. |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Heather N. Wright, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: 11/22/2022

_____
*Judge's signature*

City and state: Milwaukee, WI  Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEACH WARRANT

I, Heather N. Wright, being first duly sworn on oath, on information and belief state:

**I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone's assigned call number:

    a. **(414) 676-7641** ("**Target Cell Phone**"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2. T-Mobile will be referred to as the "Service Provider." The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs

of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

4. Based upon my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

5. To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators aurally or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take, or cause to be taken, photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other Agents, law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Brendan WASHINGTON (DOB XX/XX/1991), hereafter "WASHINGTON," committed a series of armed robberies at the same CVS Pharmacy, located at 7550 West Perkins Place, Milwaukee, Wisconsin, on July 14, 2022, September 11, 2022, October 16, 2022, and November 2, 2022, in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery) and 924(c) (brandishing of a firearm during a crime of violence). I further submit that there is probable cause to believe that evidence of WASHINGTON's and others' involvement in the robberies will be recovered in the records that are sought herein.

## II.  PROBABLE CAUSE

### JULY 14, 2022 - CVS ARMED ROBBERY

8.  On July 14, 2022, at approximately 8:54 p.m., a lone black male entered the CVS Pharmacy, located at 7550 West Perkins Place, Milwaukee, Wisconsin while the CVS security Guard, initials, K.C., was attempting to close and lock the doors. The suspect attempted to push his way passed the security guard and stated "Let me grab something quick." K.C. and the suspect began to physically grapple and K.C. was able to push the suspect against the door. While K.C. had the suspect against the door, the suspect pulled out a black semi-automatic hand gun and pointed it at K.C.. The suspect gestured with the pistol for K.C. to go back inside the store and held K.C. by the back of his shirt while they walked in together. As they entered the store, the suspect handed K.C. a folded white piece of paper and told him to "give it to her" while pointing at Y.S., the store manager. The suspect used the hand gun to gesture K.C., Y.S. and another employee, B.M., to the back of the store where the store safe was located. Once in the room where the safe was located, the suspect demanded Y.S open the top and bottom safes and retrieve the money that was in several trays. The suspect made K.C. dump the money from the trays into a purple colored duffle bag that was handed to him by the suspect. The suspect obtained approximately $1,000.00 from the safe, before fleeing the store. The suspect was wearing a black hooded sweatshirt, black pants, black shoes, blue hospital gloves, a Spiderman mask, and he was carrying a purple duffel bag. The robbery discussed herein affected interstate and foreign commerce.

### SEPTEMBER 11, 2022 - CVS ARMED ROBBERY

9.  On September 11, 2022, at approximately 6:52 p.m., a lone black male entered the CVS Pharmacy, located at 7550 West Perkins Place, Milwaukee, Wisconsin, with a purple opened

umbrella. The security guard, T.H, stated that the suspect quickly dropped the umbrella, walked over to him, and pulled out a black semi-automatic hand gun from his waistband. T.H. stated that the suspect stood close to him, charged the handgun by racking the slide, and stated "you know what this is." T.H stated that the suspect then told him to "lock the doors." The suspect stood on T.H.'s right side, grabbed his jacket, and walked with him to the door front entrance. T.H. stated that after he locked the front entrance, the suspect asked him "Where is the manager?". The suspect handed T.H. a small black backpack and they walked down the center aisle of the store to locate the manager. Once they located the manager, C.M., they all walked to the front registers. The suspect told C.M. to open the first register and while C.M. was opening the register, the suspect opened another register. The suspect made T.H. hold the small back pack open and told C.M. to place the money into the bag. As C.M placed the money from the first register into the bag, the suspect placed the money from the second register into the bag. The suspect then asked if there was anyone else inside the store.

10. The suspect continued to hold onto T.H. and walked T.H. and C.M. to the rear of the store where the safe was located. While making their way back to the store, the suspect located the third employee, J.M.. The suspect held all three employees by gunpoint and demanded they walk to the back office. The suspect demanded that C.M. open the safe and place the money into the backpack. The suspect obtained $800 from the safe, as well as between $1,000 to $3,000 from two cash registers, and fled the store on foot. The suspect was wearing a black, hooded zip up jacket, black khakis pants, black and white shoes, was carrying a purple umbrella and a black backpack. The robbery discussed herein affected interstate and foreign commerce.

6. When asked about former employees, J.M. advised MPD Detective Martinez that a Brendan (later determined to be WASHINGTON) was terminated in July 2022. J.M. also advised

that Brendan matched the physical description of the robber and that Brendan wore similar black Nike high-top shoes that the robber wore. J.M. advised that she could identify Brendan's voice, and that if Brendan was the robber, that would explain why the robber did not speak in her presence.

7. CVS General Manager, initials G.T., confirmed WASHINGTON's former employment, and noted that the robber appeared to be familiar with how to open the CVS cash registers, which WASHINGTON would be.

**OCTOBER 16, 2022 - CVS ARMED ROBBERY**

8. On October 16, 2022, at approximately 9:04 p.m., the CVS Manager, C.M., of the CVS Pharmacy, located at 7550 W. Perkins Place, Milwaukee, Wisconsin, was closing up the store with his security guard, J.P.. C.M walked outside with J. P., and as he said goodnight to J.P., he had his back to the door. C.M. stated that he then heard what he thought was a handgun being racked, and when he turned, there appeared a suspect. The suspect grabbed his arm and said, "Let's go back in." C.M. advised that he was also present during the September 11, 2022 robbery and believed the robber's voice was the same in both robberies. The suspect told C.M. to go directly back to the area where the safe was located. When they arrived at the safe, the suspect told C.M to "hurry up." C.M. noted that the alarm was going off inside the store at the time. The suspect told C.M. to open both the upper and lower safes. The suspect demanded C.M. place the contents of the safe into a bag provided by the suspect but C.M. refused to assist so the suspect placed the money into the bag himself. The suspect received approximately $2,500 from the safe and also took approximately $300 from the a till located there as well. C.M. noted that the suspect did not take all of the till money and fled the store. The robbery discussed herein affected interstate and foreign commerce.

## NOVEMBER 2, 2022 - CVS ARMED ROBBERY

9. On November 2, 2022, at approximately 8:07 a.m., a lone black male approached the CVS Pharmacy, located at 7550 W. Perkins Place, Milwaukee, Wisconsin. The suspect, armed with a dark-colored handgun, approached the CVS General Manager, G.T. and Manager, C.M., pointed the gun at them, and gestured to them to enter the store. C.M stated that he was sure that the suspect was the same individual that had previously robbed the store before. Due to being a victim of the previous robberies, C.M. knew exactly what the suspect wanted and turned to walk towards the back of the store while the suspect followed. Once in the office, the suspect motioned with the firearm for them to use plastic CVS bags to put the money from the safe. C.M. began to place the money from the tills into the bag while G.T. placed the money from the safe into the bags. C.M. stated that he believed the suspect thought they were moving too slow, so the suspect racked the slide of the firearm in an attempt to get them to move faster. The suspect obtained approximately $922 in U.S. currency and fled the store. G.T. described the man as a black male, approximately 20-30 years of age, 5'09" to 5'10", slender build, wearing all black colored clothing, a dark-colored facemask, and dark-colored gloves. The robbery discussed herein affected interstate and foreign commerce.

10. During this robbery, the robber was given bait money that contained a covert tracking device. The device was tracked after the robbery and came to rest at 4330 North 91st Street, in Milwaukee, Wisconsin, which was a previously known residence for WASHINGTON (see below), at approximately 8:29 a.m..

11. At approximately 8:44 a.m., a woman who identified herself as WASHINGTON's girlfriend, initials J.A., arrived at 4330 North 91st Street, in Milwaukee, Wisconsin, driving a silver-colored Nissan Rogue, bearing Wisconsin Registration ANX 3371, with damage to the front

6

driver's side bumper. The vehicle is registered through the Wisconsin Department of Transportation to J.A. and WASHINGTON, at 4330 North 91st Street, Milwaukee, Wisconsin. J.A. confirmed that she lived at the above address with WASHINGTON, in the upstairs apartment.

12. J.A. provided a telephone number for WASHINGTON of **414-676-7641**, the **Target Cell Phone**. At approximately 8:53 a.m., FBI SA Ian Byrne called WASHINGTON at the number provided. WASHINGTON denied being inside the residence and claimed to be driving around in the City of Milwaukee. At approximately 9:09 a.m., WASHINGTON exited the residence, located at 4330 North 91st Street, Milwaukee, Wisconsin, and was detained by MPD Detectives. WASHINGTON declined to be interviewed and requested an attorney when MPD Detectives tried to later interview him in regards to the CVS robberies.

13. On November 2, 2022, J.A. was interviewed by MPD Detective Ross Mueller. J.A. initially denied that WASHINGTON was with her, in her vehicle, at any point during that day. She then advised that while she was taking her child to school, she dropped WASHINGTON off at a McDonald's Restaurant, at 7451 West Appleton Avenue, Milwaukee, Wisconsin, shortly after 8:00 a.m., so he could get something to eat. She then picked him up after dropping her child off at school, but he was not at the McDonald's. J.A. found WASHINGTON near the McDonald's when he waved her down. J.A. believes WASHINGTON was wearing all black and carrying a plastic grocery type bag. Per MapQuest, the above McDonald's is approximately 2 tenths of a mile from the CVS Pharmacy that was robbed. When asked, J.A. advised that she and Washington did own a purple umbrella, but she does not know where it currently is (the robber during the September 11, 2022 CVS robbery had a purple umbrella).

14. On November 2, 2022, at approximately 12:05 p.m., a State of Wisconsin search warrant was executed, at 4330 North 91st Street, upstairs unit, in Milwaukee, Wisconsin. During

the search, a black semi-automatic 9 mm Sig Sauer P365 handgun bearing SN: 66B383241, 9mm ammunition, black colored pants, a Spiderman facemask (similar to the one worn by the robber during the July 14, 2022 CVS robbery), black and white tennis shoes, black gloves (similar to those worn in the November 2, 2022 robbery), approximately $924.00 in U.S. currency, in which the covert tracking device was hidden, a gold Samsung phone, and a black iPhone were recovered from the apartment. Both phones were located in the bedroom that Washington and J.A. share..

15. The **Target Cell Phone** number, **414-676-7641,** was determined to be associated to the Service Provider, **Sprint PCS,** which is owned and operated by **T-Mobile**.

16. Your affiant is also requesting the subscriber information, call detail records, text message connection records, text message content information, specialized location records, and cloud storage records for telephone number **Target Cell Phone** for the timeframe of May 1, 2022 at 12:00 a.m.(CST) to November 18, 2022 at 11:59 p.m. (CST). The cellular phone assigned to this number was not able to be located at the residence at the time of the search warrant.

## IV.  CELL SITE DATA

17. In my training and experience, I have learned that the Service Providers are companies that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18. Based on my training and experience, I know Service Providers can collect cell-site data about the **Target Cell Phone**. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phone to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone** user or users and may assist in the identification of co-conspirators and/or victims.

V. **AUTHORIZATION REQUEST**

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21.     I further request that the Court direct Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

**Property to Be Searched**

Records and information associated with the cellular telephone assigned call number 414-676-7641 (referred to in attachment B as "the Account"), that is stored at the premises controlled by Sprint Corporation, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the following dates: May 1, 2022 through November 18, 2022:

    A.    The following information about the customers or subscribers of the Account:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        3.    Local and long distance telephone connection records;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        5.    Length of service (including start date) and types of service utilized;

        6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        7.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Section 1951 (Hobbs Act) and Title 18, United States Code, Section 924(c) (use of a firearm during a crime of violence) involving BRENDAN J. WASHINGTON, during the period of May 1, 2022, through November 18, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Providers to locate the things particularly described in this Warrant.